1

2

3

4

5

6

7                           **UNITED STATES DISTRICT COURT**

8                              **DISTRICT OF NEVADA**

9

10   EDUARDO ARTIAGA, *et al*.,

11         Plaintiffs,                          Case No. 2:06-CV-01177-KJD-LRL

12   v.                                         <u>**ORDER**</u>

13   HUTCHINS DRYWALL, INC., *et al*.,

14         Defendants.

15

16

17         Presently before the Court is Defendant Pulte Home's Motion to Dismiss (#30).  Plaintiff

18   filed a Response in opposition (#32) to which Defendant filed a Reply (#43).

19   <u>**I. FACTUAL BACKGROUND**</u>

20         Plaintiffs Eduardo Artiaga, Miguel Flores, Francisco Flores, Tomas Nava and Jorge Murgia

21   ("Plaintiffs") filed their original Complaint on September 21, 2006, in which they alleged violations

22   of the Fair Labor Standards Act as well as violations of N.R.S. 608.115.  (Pls.' Compl. 10-12.)  The

23   Complaint names subcontractors Hutchins Drywall, Inc., Mark Hutchins, and Centennial Drywall

24   Systems, Inc. as defendants ("Employer Defendants").  <u>Id.</u>  The Complaint also names original

25   contractor Pulte Home as a defendant, pursuant to N.R.S. 608.150, because Employer Defendants

26   were allegedly subcontractors to Pulte Home and Plaintiffs performed work on Pulte Home projects

1  as directed by Employer Defendants.  Id. at 13,14.  Plaintiffs worked for Employer Defendants for

2  more than four years as drywall workers.  Id. at  6.

3      Plaintiffs allege that Employer Defendants required Plaintiffs to work more than forty hours

4  in a workweek with no additional compensation for those hours in excess of forty hours as required

5  by the Fair Labor Standards Act, 29 U.S.C. §§ 206 and 207.  (Pls.' Compl. 11.)  Plaintiffs further

6  allege that Employer Defendants misrepresented to Plaintiffs that they were independent contractors,

7  and therefore that Plaintiffs were not eligible for overtime compensation under the law.  Id. at 7.

8  Plaintiffs have not claimed a specific amount of unpaid wages that are owed, but claim this is due to

9  Employer Defendants' lack of maintaining records of Plaintiffs' hours worked.  Id. at 11.  Plaintiffs

10 further allege that they worked overtime, which was not compensated, on projects that Employer

11 Defendants had subcontracted from Pulte Home.  Id. at 14.

12      Here, Pulte Home contends that they cannot be properly included as a party to the litigation

13 under N.R.S. 608.150 for two main reasons: (1) because a court must find the subcontractor owes

14 unpaid wages, unpaid benefits, or damages prior to the involvement of an original contractor, and

15 Plaintiffs have not done so; and (2) because Plaintiffs must exhaust all possibilities of recovery from

16 the subcontractors before they may collect from the general contractor under N.R.S. 608.150, and

17 Plaintiffs have not done so.  (Def. Mot. Dismiss 4.)  In opposition, Plaintiffs contend it is proper for

18 Pulte Home to be included in the litigation because it is not necessary to obtain a court finding of

19 unpaid wages, unpaid benefits, or damages prior to the involvement of a general contractor.  (Pls.'

20 Resp. 2.)  Plaintiffs further contend that they are not required to exhaust all possibilities of recovery

21 from the subcontractor before the general contractor may be held liable under N.R.S. 608.150.  Id. at

22 7.

23 **II. STANDARD & ANALYSIS**

24      The Court finds it is not premature or improper for Pulte Home, the original contractor, to be

25 joined in the present suit, and that Plaintiffs may sue the subcontractors and the original contractor

26 concurrently.  The Court further finds that Plaintiffs do not need to obtain a final court judgment

2

1  against the subcontractors in order to proceed against the original contractor.  Also,  Plaintiffs do not

2  need to show that the subcontractors are unable to pay in order to proceed against the original

3  contractor.

4        Pulte Home argues that N.R.S. 608.150 essentially creates two conditions that must be met

5  before the original contractor may be held liable.  They are: (1) that a plaintiff must obtain a court

6  finding of subcontractor liability, and (2) that the subcontractor be unable to pay or satisfy the

7  judgment.  Pulte wishes this Court to believe that Plaintiffs are unable to sue both subcontractors and

8  general contractors jointly.  The Court does not agree.

9        The plain language of N.R.S. 608.150 states, "[e]very original contractor . . . shall assume

10  and be held liable for the indebtedness for labor incurred by any subcontractor or any contractor

11  acting under, by or for the original contractor in performing any labor, construction or other work

12  included in the subject matter of the original contract . . ."  N.R.S. 608.150(1).  The statute further

13  states that the district attorney can "institute civil proceedings against any such original contractor

14  failing to comply with the provisions of this section in a civil action for the amount of *all wages and*

15  *damage that may be owing or have accrued as a result of the failure of any subcontractor* acting

16  under the original contractor . . ." N.R.S. 608.150(3) (emphasis added).  This has been expanded by

17  the Supreme Court of Nevada in U.S. Design to give all employees a private right of action directly

18  against the original contractor.  U.S. Design & Constr. v. I.B.E.W. Local 357, 50 P.3d 170, 172 (Nev.

19  2002).

20        Nevada Courts have upheld the right of employees of a subcontractor to sue the original

21  contractor for unpaid wages, and that original contractors may be liable to the same extent as the

22  subcontractor.  They have further held that employees may sue a subcontractor and original

23  contractor jointly, before the liability of the subcontractor has been established by a court judgment.

24        In Trustees v. Summit, the United States District Court for the District of Nevada held that

25  subcontractors and their original contractors could be sued concurrently.  Trustees of Const. Industry

26  and Laborers Health and Welfare Trust v. Summit Landscape Co., 309 F.Supp.2d 1228 (D. Nev.

1   2004).  In <u>Summit</u>, Lake Mead Constructors was a general contractor for landscape work on the

2   Southern Nevada Water Authority's River Mountain Project, and Summit was its subcontractor.  <u>Id.</u>

3   at 1232.   In <u>Summit</u>, both the general contractor and the subcontractors were sued simultaneously

4   *before* the liability of the subcontractor had been established.  <u>Summit</u>, 309 F.Supp.2d 1228.  The

5   court in <u>Summit</u> held that Summit was liable for $289,682.93 in unpaid contributions, $53,860.11 in

6   interest on the unpaid contributions, $53,860.11 in liquidated damages, and reasonable attorney's

7   fees.  <u>Id.</u> at 1245.  The court further held that Lake Mead Constructors, the original contractor, was

8   liable "to the same extent as Summit" for failure to pay the trust fund contributions.  <u>Id.</u>  In line with

9   the court's reasoning in <u>Summit</u>, the Court agrees that a general contractor and a subcontractor may

10  be sued concurrently.

11       Similarly, in <u>Tobler v. Board of Trustees</u>, the Supreme Court of Nevada held that employees

12  are not required to exhaust all possibilities of recovery from the subcontractor before pursuing the

13  general contractor.  <u>Tobler and Oliver Constr. Co. v. Board of Trustees of the Health and Insurance</u>

14  <u>Fund for Carpenters Local Union No. 971</u>, 442 P.2d 904 (Nev. 1968).  Tobler was a general

15  contractor for the construction of a micro-wave station, and White Concrete was the sub-contractor.

16  <u>Id.</u> at 905.  White Concrete failed to carry out its sub-contract and also failed to pay all of its labor

17  bills.  <u>Id.</u>  Tobler paid off the balance of White Concrete's labor bills and its insurance premiums

18  owed.  <u>Id.</u>  Tobler did not however, pay the amount owed by White Concrete to the Union under the

19  terms of the collective bargaining agreement.  <u>Id.</u>  The Union then sued both Tobler and White

20  Concrete for the money owed.  <u>Id.</u>  Shortly after the suit commenced, the subcontractor confessed

21  judgment in the amount prayed for in the complaint.  <u>Id.</u>  Summary judgment was moved for against

22  the general contractor, which was granted.  <u>Id.</u>  On appeal, the Supreme Court of Nevada upheld the

23  summary judgment.  <u>Id.</u> at 906.  Tobler made the same argument Pulte Home makes in the present

24  case by contending that the Plaintiffs were obligated to exhaust all possibilities of recovery against

25  the subcontractor before they could avail themselves of the benefits of N.R.S. 608.150 to recover

26  from Tobler.  <u>Id.</u> at 905.  The Supreme Court did not agree with Tobler, stating that Tobler "cites no

1   authority to support its position, nor does the wording of N.R.S. 608.150 lend any support to its

2   contention." Id. at 905.  Here, the Court finds the reasoning of the Tobler court applicable and

3   persuasive in the present case.  Plaintiffs need not exhaust all possibilities of recovery from

4   Employer Defendants before they may avail themselves of the benefits of N.R.S. 608.150 to recover

5   from Pulte Home.

6           The Supreme Court of Nevada in U.S. Design, clarified N.R.S. 608.150.  It held that N.R.S.

7   608.150(3) grants employees of a subcontractor a private right of action against the general

8   contractor.  U.S. Design & Constr. v. I.B.E.W. Local 357, 50 P.3d 170 (Nev. 2002).  U.S. Design

9   was a general contractor that entered into a subcontract with Horizon to do the electrical work for a

10  store in the Forum Shops at Caesar's Palace.  Id. at 171.  Horizon thereafter declared bankruptcy and

11  failed to pay its employees benefits that had been deducted from their paychecks.  Id.  The Nevada

12  District Court granted a motion for summary judgment against U.S. Design.  Id.  On appeal, U.S.

13  Design argued that only district attorneys may enforce the provisions of N.R.S. 608.150, and that the

14  statute did not grant a private right of action to the Union or the Trustees.  Id. at 172.   Upon

15  examination of the statute's legislative history, the Supreme Court of Nevada made it clear that

16  N.R.S. 608.150 intended to give workers a right to bring actions against general contractors for

17  unpaid wages stating, "the legislature's intent to permit workers to have a private right of action is

18  readily apparent [under N.R.S. 608.150]." Id. at 172.

19          Moreover, the statute language does not expressly include a two-part condition which must

20  be satisfied prior to the original contractor's liability.  Defendant Pulte Home is asking the Court to

21  interpret N.R.S. 608.150 to include two procedural requirements that were not included in the

22  statute's language by the Nevada Legislature.  The language "*may be owing* or have accrued" does

23  not require a plaintiff to attain a court determination prior to bringing an action against an original

24  contractor.  N.R.S. 608.150(3) (emphasis added).  A plaintiff may sue an original contractor for

25  wages that "may be owing."  This does not suggest, as Pulte Home would have the Court believe,

26  that the amount owing must be fully adjudged.  Pulte Home argues that the language "*failure of any*

5

1  *subcontractor*," signifies the subcontractor's absolute inability to pay.  The Court disagrees.  The

2  "failure of any subcontractor" refers to the subcontractor's actual failure to pay wages, and not its

3  ability to pay them.

4        An examination of the legislative history of N.R.S. 608.150 supports this finding.  In 1932,

5  the Nevada Commissioner of Labor expressed a desire for a change in Nevada's labor and

6  employment laws that greatly influenced the enactment of the statute which later became N.R.S.

7  608.150.  See 1929-1930 Nev. Comm'r Labor Biennial Rep. 7, reprinted in 1 Appendix to Journals

8  S. & Assemb., 35th Sess. (Nev. 1931).  The Commissioner stated, "I believe amendments should be

9  adopted to our present laws or new legislation passed making the subcontractor an employee of the

10  general contractor and the general contractor held responsible for the payment of wages . . ." Id.

11  Pulte Home contends that the Commissioner's statement essentially meant that if the subcontractor

12  unlawfully evaded liability for unpaid wages, then employees could collect from the original

13  contractor.  However, as stated above, the Supreme Court of Nevada has held that the reports from

14  the Commissioner of Labor indicate a desire to expand the options available to workers for

15  recovering unpaid wages, and not to narrow those options.  U.S. Design & Constr. v. I.B.E.W.

16  Local 357, 50 P.3d 170, 172-173 (Nev. 2002).

17        In light of the Nevada case law, the plain language of the statute, and the legislative history,

18  the Court finds that Defendant Pulte Home is properly included in the current action.  Plaintiffs need

19  not obtain a court finding against the subcontractor in order to proceed against the original

20  contractor.  The Court further finds that N.R.S. 608.150 was intended to expand workers' options to

21  recover unpaid wages.  It would be inappropriate to limit a plaintiff's recovery from an original

22  contractor only to instances where the subcontractor is absolutely unable to pay.  As held in Summit,

23  this Court agrees that the original contractor, Pulte Home, may be held liable to the same extent as

24  the subcontractors.  Trustees v. Summit, 309 F.Supp.2d 1228 (D. Nev. 2004).

25        The Court notes that Pulte Home's potential liability is limited, however, to the amount of

26  unpaid overtime wages which Plaintiffs incurred while working on Pulte Home projects.  Plaintiffs

have established that Pulte Home was a general contractor for Employer Defendants, however, the Court agrees with Pulte Home that Plaintiffs have not yet established that Employer Defendants may owe Plaintiffs additional wages as a result of overtime work on a Pulte Home project.  Plaintiffs necessarily bear this burden of proof.  The scope of the current motion is limited to the grounds that it is procedurally improper to include Pulte Home.  The Court finds that it is procedurally proper for Pulte Home to be included in the present action.  Therefore, Pulte Home's Motion to Dismiss is hereby denied.

**III.  CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Defendant Pulte Home's Motion to Dismiss (#30) is **DENIED**.

DATED this 27th day of July 2007.


_____
Kent J. Dawson
United States District Judge

7