# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

EDUARDO ARTEAGA, et al.,

    Plaintiffs,

v.

HUTCHINS DRYWALL, INC., et al.,

    Defendants.

Case No. 2:06-CV-01177-KJD-LRL

**ORDER**

    Currently before the Court are Defendants' Motions to Revoke (##158, 159).  Plaintiffs filed Responses (##160, 161), to which Defendants filed a Reply (#163).  Defendants seek that the Court revoke its previous Orders Granting Verified Petitions to Practice Pro Hac Vice.  Specifically, Defendants aver that counsel for Plaintiffs, the Weinberg law firm, has violated the Nevada Rules of Professional Conduct by engaging in the unauthorized practice of law, and by soliciting professional employment from prospective clients with whom the law firm had no family or prior professional relationship, and resultantly seeks that the Court revoke its Orders granting the Weinberg law firm's Verified Petitions for Permission to Practice Pro Hac Vice and disqualify said law firm from representing Plaintiffs in this action.  For the reasons stated herein, the Court Denies Defendants' Motions.

**I. Legal Standard**

    Pursuant to Local Rule IA 10-2, an attorney that files a verified petition for permission to practice pro hac vice, "certifies that he or she shall be subject to the jurisdiction of the courts and disciplinary boards of this state with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the State Bar of Nevada" and that he or she "shall comply with the standards of professional conduct of the State of Nevada and all other standards of

professional conduct. . . ." Id. "The granting or denial of a petition to practice under this rule is discretionary" and "[t]he court may revoke the authority of the person permitted to appear as counsel under this rule to make continued appearances. . . ." Id.

Federal courts apply state law in determining matters of attorney disqualification. In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000) ("Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue.") (citations omitted). The Supreme Court of Nevada has stated that "[c]ourts deciding attorney disqualification motions are faced with the delicate and sometimes difficult task of balancing competing interests: the individual right to be represented by counsel of one's choice, each party's right to be free from the risk of even inadvertent disclosure of confidential information, and the public's interest in the scrupulous administration of justice." Brown v. Eighth Judicial Dist. Court, 14 P.3d 1266 (Nev. 2000) (citation omitted). The Nevada Supreme Court has stated that "[w]here disqualification is contemplated, 'any doubt is resolved in favor of disqualification.'" Palmer v. Pioneer Inn Assocs., 19 F.Supp.2d 1157, 1162 (D. Nev. 1998) (citing Faison v. Thornton, 863 F.Supp. 1204, 1216 (D.Nev. 1993)), overruled on other grounds, 338 F.3d 981 (9th Cir. 2003). "'At the same time, however, the [C]ourt views disqualification as an extreme sanction' . . . to be imposed only after a careful consideration of the client's right to be represented by the counsel of her choice, and the nature and extent of the ethics violation." Id. at 1162, citing Brown v. St. Joseph County, 148 F.R.D. 246, 255 (N.D. Ind. 1993) and Faison, 863 F.Supp. at 1217.

A motion to disqualify opposing counsel is given particularly strict scrutiny because there is a "significant possibility of abuse for tactical advantage." Hacket v. Feeney, 2010 WL 4102911 *3 (D. Nev. Oct. 2010)(citing Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd., 760 F.2d 1045, 1050 (9th Cir.1985). District courts are required to use caution in order to prevent parties from misusing motions for disqualification as "instruments of harassment or delay." Brown, 14 P.3d at 1266. "Courts therefore approach the issue of whether to disqualify opposing counsel as 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'" Hacket v. Feeney, 2010

WL 4102911 *3, (citing United States v. Titan Pac. Const. Corp., 637 F.Supp. 1556, 1562 (W.D. Wash. 1986)).

### A. Unauthorized Practice of Law

Under Nevada law, only a licensed attorney may be duly authorized to represent a client during legal proceedings. Guerin v. Guerin, 993 P.2d 1256, 1258 (Nev. 2000) (citing NRS 7.285); Martinez v. Eighth Jud. Dist. Ct., 729 P.2d 487, 488 (Nev. 1986) (citing SCR 77; NRS 7.285). An individual engages in the unauthorized practice of law when he performs activities customarily executed by licensed attorneys. In re Discipline of Lerner, 197 P.3d 1067, 1071 (Nev. 2008). Pertinent to this case, Nevada Supreme Court Rule 42(a)(4) provides that engaging in "discovery" proceedings may constitute the unauthorized practice of law. Other examples of activities constituting the unauthorized practice of law include evaluating legal claims, filing documents, and appearing in court on behalf of someone else. Id.

Here, Defendants assert that Plaintiffs' counsel, Manuel A. Boigues, engaged in the unauthorized practice of law by participating in and defending the depositions of numerous monolingual, Spanish speaking opt-in Plaintiffs without the presence of an in-state attorney, and without filing a verified petition to practice pro hac vice in this jurisdiction. Counsel for Plaintiffs does not contest that Mr. Boigues participated in the depositions and defended said opt-in clients without the presence of a local attorney, but avers, in opposition, that the failure to file a pro hac vice petition prior to the depositions at issue was a "ministerial error" and was corrected as soon as it was brought to the firm's attention. (#161 at 2.)

The Court recognizes the purpose and necessity for Local Rule 10-2, and requires all attorneys making appearances within its jurisdiction to abide by the local rules of practice. Here, the Court recognizes that the Weinberg law firm's failure to timely file a pro hac vice application was in violation of Local Rule IA 10-2. However, because a valid petition (#159) was filed immediately subsequent to said deficiency being brought to Plaintiffs' attention, and under the circumstances

alleged in this particular case, the Court finds the violation to be minor, inadvertent, and unworthy of sanction or disqualification.

### B. Fair Labor Standards Act Opt In Requirement

Additionally, Defendants argue that counsel for Plaintiff should be disqualified for soliciting professional employment from prospective clients with whom the law firm had no family or prior professional relationship.  Specifically, Defendant argues that the Weinberg law firm violated Nev. R. Prof. Conduct 7.3(a) which proscribes attorneys from "solicit[ing] professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, by mail, in person or otherwise. . . ."

Here, Defendants argue that the Weinberg law firm violated Nevada's no solicitation rule when, through its non-attorney agents at the Painter's Union, it solicited professional employment from prospective clients.  The Court does not agree.  This action is brought under the Fair Labor Standards Act ("FLSA") Section 216(b) which allows "similarly-situated" employees to join the suit by filing a written consent of the court in which the action is brought.

As stated above, Section 216(b) of the FLSA authorizes a plaintiff to bring a "collective action" on behalf of similarly situated persons subject to the requirement that any person who wishes to become a part of the collective action must file a written consent in the court in which such action is brought. 29 U.S.C.A. § 216(b).  This "opt-in" requirement distinguishes § 216(b) FSLA collective actions from class actions brought under Fed. R. Civ. P. 23.  Rule 23 provides that, in the case of a class certified pursuant to subsection (b)(1) or (b)(2), all class members are bound by the court's decision irrespective of their desires and that, in the case of a class certified pursuant to subsection (b)(3), class members are bound by the court's decision unless a class member desires to opt out of the class.  In contrast, pursuant to § 216(b), a person is not considered a member of the "collective action" and will not be bound by or benefit from the court's judgment unless the person has filed a written consent with the court and thereby "opted in" to the suit. McElmurry v. U.S. Bank Nat. Ass'n, 495 F.3d 1136, 1139 (9th Cir. 2007); LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288

1  (5th Cir. 1975).  These opposing requirements of a Rule 23 class action and a § 216(b) collective
2  action are "irreconcilable," and thus preclude a plaintiff from bringing a Rule 23 class action under §
3  216(b).  Id. at 287.
4       The United States Supreme Court has stated that giving notice to potential plaintiffs of a
5  collective action has less to do with the due process rights of the potential plaintiffs and more to do
6  with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest
7  in "managing collective actions in an orderly fashion." Hoffmann-La Roche Inc. v. Sperling, 493
8  U.S. 165, 173 (1989).  Although § 216(b) does not require district courts to approve or authorize
9  notice to potential plaintiffs, the Supreme Court stated that it is within the court's discretion to
10  authorize such notice.  Id. at 171;  see Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058,
11  1064 (9th Cir. 2000) (a district court "may authorize the named plaintiffs . . . to send notice to all
12  potential plaintiffs").  In this case, it is alleged that counsel for the Plaintiffs sent a union
13  representative (also an agent of the Weinberg law firm) to construction tract sites to meet with and
14  seek out potential Plaintiffs.
15       As stated in Hoffman, the Court's interest in "managing collective actions in a orderly
16  fashion", McElmurry v. U.S.Bank Nat. Ass'n, 495 F.3d at 1139, is to "counter the potential for
17  misuse of the class device, avoid[] multiplicity of duplicative suits, and set[] reasonable cutoff dates
18  to expedite the action's disposition."  Hoffmann-La Roche, 493 U.S. 165 at 484.[1]

---

[1] This Court has utilized a two-step evaluation when determining whether potential plaintiffs are similarly situated under the FLSA. Williams v. Trendwest Resorts, Inc., WL 3690686 (D. Nev. 2006).  Under the two-step approach, the Court first engages in what is called the "notice stage", during which Plaintiffs bear the burden of demonstrating that potential opt-in Plaintiffs are similarly situated.  The burden is light, and may be based on pleadings and/or affidavits which have been properly submitted to the court.  Id. (citing Bonilla v. Las Vegas Cigar Co., 61 F.Supp.2d 1129, 1139 n. 6 (D. Nev. 1999).  While the standard is "fairly lenient", the evidence must demonstrate at least "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice."  Mooney v. Aramco Services Co., 54 F.3d 1207 (5th Cir. 1995)(overruled on other grounds in Desert Palace, Inc. v. Cost, 539 U.S. 90 (2003)); Bonilla v. Las Vegas Cigar Co., 61 F.Supp.2d at 1139 n. 6.  If, during the notice stage, the Court determines that there are similarly situated potential plaintiffs, it will "conditionally" certify a class.  Then, putative class members are notified, and given the opportunity to opt-in to the suit by filing a written consent form.  See Williams v. Trendwest Resorts, Inc., WL 3690686 *4 (D. Nev. 2006).  Upon conditionally certifying a class, and after discovery is largely complete, the court engages in the second-step of the similarly situated evaluation by making a second, factual determination as to whether the opt-in plaintiffs are similarly situated.  If, upon examining the

The original Complaint in this action was filed on September 21, 2006, over four years ago. Plaintiffs filed a Motion for Collective Action Class Certification (#44) on March 20, 2007, which was granted by the Court on February 8, 2008, pending approval of Plaintiffs' revised Proposed Notice. (See #77).  Plaintiffs timely filed a revised Proposed Notice of Pendency of Collective Action Lawsuit (#78) on February 14, 2008.  After the proposed date for final submission of opt-in forms expired without court approval of the Notice (#78), Plaintiffs filed a Motion for Court Approval of a Second Revised Proposed Notice of Pendency of Collective Action Lawsuit.  (#91). On August 11, 2008, the Court found that the Proposed Notice filed by Plaintiffs adequately conformed to the facts of the case and accurately imparted of those facts to potential opt-in plaintiffs.

Here, Defendants are seeking the sanction of disqualification of counsel for the violation of Nevada's Rule of Professional Conduct for solicitation of clients, arguing that any doubt regarding attorney misconduct, "should be resolved in favor of disqualification." (#158 at 13, citing Cronin 105 Nev. at 640).  The Court notes however, that Defendants were ordered to provide Plaintiffs with the names, telephone numbers, and last known addresses of drywall workers who performed work for Centennial and Hutchins for the time period from September 22, 2003 to August 11, 2008.  (See #106 at 2.)   This issue has not been addressed in the briefing for the instant Motion.  The Court notes however, that the parties have acknowledged previously, the necessity that Defendants assist in the location of potential opt-in Plaintiffs.  Additionally, Plaintiffs sought, and the Court set a reasonable period of time—120 days after Defendants provided Plaintiffs with the drywall employee list—in which putative class members could opt-in to the action. (See #106 at 3.)   Here, there has been no allegation of untimeliness.  Therefore, an examination of the current claims against Plaintiffs' counsel does not merit the sanction Defendants seek.

---

facts, the court determines that the claimants are not similarly situated, the class is decertified and the opt-in plaintiffs are dismissed without prejudice. See Williams v. Trendwest Resorts, Inc., WL 3690686 *4 (D. Nev. 2006). If however, the court finds that claimants are similarly situated, the representative action is allowed to proceed as a collective action. See Mooney v. Aramco Services Co., 54 F.3d 1207, 1213 (5th Cir. 1995).

This case has already been delayed extensively for discovery purposes. The Court is weary of allowing any other exercises or actions that may further impede the ultimate disposition of the case. Thus out of "caution in order to prevent [the] misuse of motions or disqualification as "instruments of harassment or delay" and upon balancing the interests of all parties involved, the Court exercises its discretion to deny Defendants' Motion for disqualification. Brown, 14 P.3d at 1266.

## II. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motions to Revoke (##158, 159) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Ex Parte Application for Leave to file Sur-Reply (#167) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (#169) is **DENIED**, as moot.

DATED this 21st day of January, 2011.

_____
Kent J. Dawson
United States District Judge